# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 06-40043

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 4, 2007**

Charles R. Fulbruge III
Clerk

DAVID DEL TORO, JR.,

Petitioner-Appellant,

v.

NATHANIEL QUARTERMAN,
Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee

Appeals from the United States District Court
for the Eastern District of Texas

Before JONES, Chief Judge, REAVLEY and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

David del Toro, Jr., appeals the denial of his habeas corpus petition alleging ineffective assistance of counsel. We affirm.

I.

Del Toro was convicted in Texas state court, by guilty plea, of injury to a child and was sentenced to seventeen years' imprisonment. He did not directly appeal but did unsuccessfully petition the state for habeas relief.

The conviction stemmed from del Toro's treatment of his three-month-old daughter Alexyah. Del Toro gave two statements to police acknowledging that he held a blanket over her face for one to two minutes to stop her crying. When he removed the blanket he noticed that she was having trouble breathing, so he took her to the hospital.

He told the hospital staff that he had put Alexyah down for a nap and went to sleep next to her. He said he was awakened by a phone call thirty minutes later and noticed that she was unresponsive and that her face was gray with labored breathing; he did not mention the blanket. Alexyah was found to have severe neurologic, cardiac, and respiratory dysfunction with an unexplained cause. As a result of the respiratory failure, her brain was seriously damaged from lack of oxygen.

Despite del Toro's untruthful explanation, the medical staff suspected "non-accidental trauma," as evinced by several entries in Alexyah's medical records. Some of the notations indicate that del Toro had another infant child who had died under similar circumstances. One doctor noted that the circumstances of Alexyah's injuries and the family history were "very troubling and suggestive of infanticide."

After del Toro was charged, he hired attorney Dennis Jones to represent him. Jones did not retain an expert to review Alexyah's medical records. At the hearing on del Toro's petition for a new trial, Jones testified that he had hoped to hire an expert before trial but that while he was representing del Toro he was never in a position, from the financial standpoint of del Toro's family, to hire an expert. Attorney John Tatum later took over as lead counsel and represented

del Toro for four months. Tatum testified that he had reviewed the medical records and del Toro's incriminating statements. He felt that he understood the medical records and had discussed with del Toro his plan to use the records to cross-examine the government's expert witnesses regarding the records. Tatum did not hire an expert to review the records and testified that del Toro never asked him to do so.

Approximately a week before trial, Tatum negotiated a plea agreement under which del Toro would receive a twenty-year sentence; Tatum advised del Toro to accept the offer because of the strength of the evidence against him and because the maximum sentence if del Toro went to trial would have been ninety-nine years. Del Toro hired a new attorney, Edward McFarland, to give him a second opinion. McFarland spent about ninety minutes going over the file and reviewing the plea offer. He testified that he had offered to hire an expert to review the records but that the family would have had to pay. Del Toro declined to hire an expert.

McFarland also noted that, because del Toro's other child had died under suspiciously similar circumstances, if the plea offer were rejected the state intended to exhume the child for investigative purposes. McFarland negotiated the plea offer down to seventeen years and advised del Toro to accept it, stating that if he turned it down McFarland thought he would be convicted and face a sentence of at least sixty years. Fearful of the possibility of a long sentence, del Toro accepted the offer, pleaded guilty, and was sentenced to seventeen years' incarceration.

After his conviction, del Toro hired new counsel, who in turn hired a medical expert, Dr. Lloyd White, to examine Alexyah's medical records. The record includes a letter from White and a subsequent affidavit. In both he concludes that Alexyah's medical records indicate that she had previous health problems that could result in the symptoms she suffered when del Toro took her to the

hospital and that her family history, including the death of her brother, who had demonstrated similar symptoms, and the infant deaths of three cousins, indicated a possible genetic predisposition to natural cardio-respiratory arrest. White concluded that "there is a reasonable medical probability that the injuries suffered by [Alexyah] were not caused by an action by [del Toro] or any other person."

White's affidavit does not discuss del Toro's statements that he held a blanket over Alexyah's head; it states that White's conclusion is based only on a review of the records. In contrast, White's letter does mention del Toro's statement to police but concludes that holding a blanket briefly over an infant's face "per se would not necessarily cause injury." It goes on, however, to state that White's understanding is that del Toro later recanted his confession, claiming it was induced by coercion. Del Toro does not claim his confession was coerced, and the district court found that there is no evidence of a recantation in the recordSSfacts that Del Toro does not contest on appeal.

After his state habeas petition was denied, del Toro filed a federal habeas petition, which the district court denied, adopting the findings and conclusions of the magistrate judge. The district court issued a certificate of appealability solely on the issue of whether the court had erred by holding that trial counsel were not constitutionally deficient for failing to conduct a reasonable investigation or make a reasonable decision not to investigate.

## II.

To prevail on his habeas claim, del Toro must show that his state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . ." 28 U.S.C. § 2254(d)(1). To prove that his counsel's performance was so poor as to fail to provide the minimum "Assistance of Counsel for

his defence" guaranteed by the Sixth Amendment, del Toro must establish (1) that counsel's performance was deficient and (2) that "the deficient performance actually prejudiced the defense to such an extent that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). A defendant must establish that his attorney erred and that but for the error he would not have pleaded guilty. See id. at 206.

In evaluating whether an attorney's conduct was deficient, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Washington, 466 U.S. at 688. To evaluate whether a defendant who has pleaded guilty has been prejudiced by his counsel's deficient performance, i.e., whether he would not have pleaded guilty had his counsel not been deficient, we must evaluate what the outcome of a trial might have been. See Armstead, 37 F.3d at 206.

Del Toro alleges that his counsel failed to investigate and discover potentially exculpatory evidence, so the existence of prejudice depends on the likelihood that the discovery of the evidence would have led counsel to change his recommendation, which in turn depends "in large part on a prediction of whether the evidence likely would have changed the outcome of a trial." Id. Del Toro need not prove by a preponderance that the result of the proceedings in the trial court would have been different, but he must sufficiently undermine confidence in the outcome to illustrate that counsel's deficient performance caused the outcome of the proceeding to be unreliable or the proceeding to be fundamentally unfair. Id. at 207.

### III.

We need not evaluate whether del Toro was prejudiced by his counsel's

choice not to hire an expert, because the choice was reasonable under the circumstances and therefore constitutionally sufficient.[1]  A lawyer has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Washington, 466 U.S. at 690-91.  We do not indulge the temptation to rely on hindsight that accompanies claims that counsel's investigation was inadequate.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 689-690.

Del Toro fails to overcome the presumption that counsel made sound strategic decisions.  He tries to explain away his own decision not to accept McFarland's offer to hire an expert by saying that the offer, because it came a few days before trial (but shortly after del Toro had retained McFarland), "could not have been more hollow."  If, however, a client instructs his attorney not to hire an investigator or contact and interview witnesses, the client cannot later claim that the failure to do these things amounted to ineffective assistance.[2]

Del Toro does not elaborate why the timing of McFarland's offer rendered it useless.  He presents no evidence that he declined the offer because of the short period of time remaining before trial rather than because he did not want to pay an expert's fee, or even that he expressed concerns about the limited time remaining for expert review at the time McFarland made the offer.  He cites no

---

[1] Although the district court relied on the prejudice prong of the Washington test to support its denial of habeas relief and did not discuss the deficiency prong, we may affirm for any reason supported by the record, even if not relied on by the district court.  See LLEH, Inc. v. Wichita County, Tex., 289 F.3d 358, 364 (5th Cir. 2002).

[2] See Roberts v. Dretke, 356 F.3d 632, 638-39 (5th Cir. 2004) (citing Autry v. McKaskle, 727 F.2d 358, 361 (5th Cir. 1984) ("By no measure can [defendant] block his attorney's efforts and later claim the resulting performance was constitutionally deficient.")).

caselaw supporting the proposition that offers to investigate made shortly before trial are worthless.

Although the trial judge had expressed reluctance to grant further continuances, del Toro could have made a persuasive case that his new attorney ought be afforded time to consult an expert about the medical records, particularly if del Toro believed that failure to do so on the part of his prior counsel had constituted severely deficient performance on their part. Instead, del Toro declined McFarland's offer, did not press for a continuance or a quick expert review, and chose to plead guilty. We will not, in these circumstances, conclude that counsel's failure to consult an expert resulted in constitutionally inadequate assistance.

AFFIRMED.