IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 97-20599

JAMES RONALD MEANES,

                              Petitioner-Appellee,

versus

GARY L. JOHNSON, Director, Texas Department
of Criminal Justice, Institutional Division,

                              Respondent-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas
_____
April 14, 1998

Before KING, SMITH, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The respondent-appellant, Gary L. Johnson, the Director of the Texas Department of Criminal Justice, Institutional Division, appeals the district court's grant of a writ of habeas corpus to James Ronald Meanes, a Texas death row inmate convicted of capital murder. For the reasons set forth below, we reverse and render.

FACTUAL BACKGROUND

On April 21, 1981, around noon, an armored van driven by Olivero Flores, who was accompanied by Dorothy Wright, pulled into the Sage grocery store parking lot on the Gulf Freeway in Houston, Texas, to pick up a deposit. As Flores exited the van and walked around to the front of the store, the petitioner, Ronald Meanes,

who is African-American, and his co-defendant, Carlos Santana,[1] who is Hispanic, exited a car parked near the front of the store and opened the trunk. Wright, still in the back of the van, then heard a "black voice" tell Flores to halt in a loud, demanding tone. Flores, who was carrying money bags in his left hand and had a weapon on his right hip, turned to face the men but made no move toward his weapon. As Flores turned, two or three shots rang out, and Flores fell to the ground, "flopping like a chicken." Although no one saw who shot Flores, it was determined that Flores was killed by a bullet from either a rifle or a pistol.

One of the men, armed with a pistol, then approached Flores, bent over him, and began firing shots at the van, about three seconds after the original shots. The same voice that Wright heard tell Flores to halt screamed, "bitch, open the door" at Wright, who was still in the back of the armored van. After more shots were fired at the van, the men broke the glass on the driver's side of the van, and Meanes entered the van. Meanes then climbed over the driver's seat to the passenger's side, looked through the wire screen to the back of the truck where Wright was lying on the floor, poked a pistol through the screen, and said, with the same voice that she had heard before, "Get up bitch, right now or you're dead." Wright then opened the back of the van and walked toward the store with her hands raised. The two men then left in the van, with the man with the pistol as the passenger.

Meanes and his co-defendant were captured soon thereafter in

---

[1] Mr. Santana was executed in 1993 for his role in this robbery/murder.

a cane patch a few blocks from the scene of the robbery. Upon questioning, Meanes revealed the location of the weapons used in the robbery.

PROCEDURAL BACKGROUND

On July 22, 1981, Meanes was convicted of capital murder after a jury trial. On July 23, 1981, after a separate punishment hearing, the jury answered affirmatively the two special issues presented to it pursuant to the version of article 37.071 of the Texas Code of Criminal Procedure then in effect. In accordance with state law, the trial court then sentenced Meanes to death. On September 14, 1983, the Texas Court of Criminal Appeals affirmed both Meanes's conviction and sentence. Meanes v. State, 668 S.W.2d 366 (Tex. Crim. App. 1983). On April 16, 1984, the United States Supreme Court denied certiorari. Meanes v. Texas, 466 U.S. 945, 104 S. Ct. 1930 (1984).

On August 15, 1984, Meanes filed his first application for a state writ of habeas corpus. On November 18, 1985, after an evidentiary hearing, the trial court entered findings of fact and conclusions of law, recommending that relief be denied. On May 7, 1986, the Texas Court of Criminal Appeals accepted the trial court's recommendation and denied the application.

On August 4, 1986, Meanes filed his first petition for a federal writ of habeas corpus. On October 18, 1988, that petition was dismissed by the district court for failure to exhaust state court remedies. Specifically, the district court found that the

- 3 -

state judge who had signed the state habeas findings, the Honorable Sam Robertson, acted without jurisdiction under state law, because he was at that time a justice on the Fourteenth Court of Appeals and therefore ineligible under state law to hear Meanes's habeas petition. In addition, the district court found that Justice Robertson was a potential witness in the state habeas corpus hearing and that Meanes was deprived of his right to cross-examine him at that hearing. Finally, the district court found that Justice Robertson had engaged in improper ex parte communications with the State regarding Meanes's habeas petition.

For reasons unknown to anyone, neither the State nor Meanes was given notice of the district court's October 26, 1988 order, and no one discovered the error until early 1995. By that time, Justice Robertson had retired from the court of appeals and was sitting as a visiting state district judge. Over Meanes's objection, Justice Robertson was again assigned to preside over Meanes's state habeas petition. After two evidentiary hearings, the trial court entered findings of fact and conclusions of law recommending that habeas relief be denied. On August 24, 1995, the Texas Court of Criminal Appeals accepted the district court's recommendation and denied the application.

On August 25, 1995, Meanes filed a second petition for federal habeas relief. On May 1, 1997, the district court entered judgment, granting habeas relief in part. Specifically, the district court found that Meanes was denied the effective assistance of counsel at the punishment stage of his trial and that

Meanes's Eighth and Fourteenth Amendment rights were violated when the trial court incorrectly instructed the venire that the law of parties[2] applied not only to the guilt phase of the trial but to the punishment stage as well. See Enmund v. Florida, 458 U.S. 782, 102 S. Ct. 3368 (1982). On July 7, 1997, the district court denied the Director's motion for reconsideration and Meanes's motion to alter or amend. On July 15, 1997, the Director filed a timely notice of appeal. Meanes has not appealed any of the district court's findings against him.

## STANDARD OF REVIEW

In reviewing requests for federal habeas corpus relief, we review the district court's findings of fact for clear error, but review issues of law de novo. Dison v. Whitley, 20 F.3d 185, 186 (5th Cir. 1994). A finding of fact is clearly erroneous when, although there is enough evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 541-42, 92 L.Ed. 746 (1948); Henderson v. Belknap (In re Henderson), 18 F.3d 1305, 1307 (5th Cir. 1994). The question of whether counsel was constitutionally ineffective is a mixed question of law and fact, which we review de

---

[2] Section 7.02(a)(2) of the penal code sets forth the law of parties and provides that "[a] person is criminally responsible for an offense committed by the conduct of another if .... acting, with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 1989).

- 5 -

novo by independently applying the law to the facts found by the district court, unless those factual determinations are clearly erroneous.  See Salazar v. Johnson, 96 F.3d 789, 791 (5th Cir. 1996); United States v. Faubion, 19 F.3d 226, 228 (5th Cir. 1994).

ANALYSIS

On appeal, the State contends that the district court erred in three ways.  First, the State argues that the district court erred in not considering the procedural bar to Meanes's Enmund claims. Contained within this discussion is the State's argument that Meanes was not denied the effective assistance of counsel.  Second, the State argues that, even assuming that Meanes's claims are not procedurally barred, the district court erred in finding that Enmund was violated.  Finally, the State argues that the district court's factual findings were clearly erroneous.  Because we find that Meanes's Enmund claims are procedurally barred and that the district court erred in concluding that Meanes received ineffective assistance of counsel, we need not address the State's second and third arguments.[3]

_____

[3] In his reply brief, Meanes does not respond in any structured way to the State's procedural bar argument.  Instead, Meanes attempts to make much of the fact that the same state court judge who presided over his first state habeas proceeding presided over his second state habeas proceeding despite Judge Hoyt's findings in his first federal habeas case.  In fact, virtually all of Meanes's reply brief centers on this one issue.  Despite our efforts, we fail to see the significance of Meanes's argument on this point.  Moreover, we note that Judge Hoyt made no reference to this claimed error in his memorandum opinion granting Meanes's petition as to the sentencing phase of his trial.  Furthermore, the overriding concern of Judge Hoyt's in 1988 -- i.e., that Justice Robertson was not authorized under state law to preside over Meanes's state habeas proceeding because he was then a Justice on the Fourteenth Court of Appeals -- was no longer

It is well settled that federal habeas review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default.  See Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546 (1991); Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038 (1989); Amos v. Scott, 61 F.3d 333 (5th Cir. 1995).  In this case, the state habeas court expressly found that Meanes's Enmund claim was procedurally barred: "The applicant is procedurally barred from advancing his habeas claim that the State and the trial court improperly instructed some veniremembers during voir dire that the law of the parties was applicable to the first special issue because he did not make a timely objection."[4]  See also Meanes v. State, 668 S.W.2d 368, 371 (Tex. Crim. App. 1983)  (direct appeal) ("No objection was made to the allegedly improper remarks, and nothing was preserved for review.").

Where a state court has explicitly relied on a procedural bar, a state prisoner normally may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice. Murray v. Carrier, 477 U.S. 478, 485, 106 S. Ct. 2639, 2644 (1986). In general, to show cause, a petitioner must demonstrate "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Id. at 488, 106 S.

_____

present when Justice Robertson presided over Meanes's state habeas proceeding in 1995, because Justice Robertson had retired from the Court of Appeals and was sitting as a district court judge by designation.

[4]  As noted above, the state trial court's findings were adopted by the Court of Criminal Appeals.

Ct. at 2465. If a petitioner fails to show cause for his procedural default, the court need not address the prejudice prong of the test. See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982).

In its brief, the State argues that the only bases upon which Meanes can establish cause are that Enmund announced a new rule that was not reasonably available at the time of trial, and that Meanes's counsel was ineffective for failing to object to the court's questioning during voir dire. We agree with the State's characterization of the issues and, therefore, will address each of these arguments in turn.

At the time of Meanes's trial, Texas law provided that the law of parties could apply to the punishment phase of the trial. See Wilder v. State, 583 S.W.2d 349, 356-57 (Tex. Crim. App. 1979), vacated and remanded on other grounds, 453 U.S. 902, 101 S. Ct. 3133 (1981). Thus, any objection to the questioning during voir dire arguably would have been futile, at least with respect to Texas law. "[T]he futility of presenting an objection to the state courts[, however,] cannot alone constitute cause for a failure to object at trial." Engle, 456 U.S. at 129, 102 S. Ct. at 1573. Instead, the claim must also be novel. Selvage v. Collins, 975 F.2d 131, 135 (5th Cir. 1992). Meanes's argument that the Supreme Court's decisions in Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954 (1978), and Woodson v. North Carolina, 428 U.S. 280, 96 S. Ct. 2978 (1976), dictate the result in this case clearly cuts against finding that the claim was novel. To the extent that Meanes argues

that cause is shown because <u>Enmund</u> was an intervening decision, we note that a claim is not novel if "other defense counsel have perceived and litigated that claim." <u>Engle</u>, 456 U.S. at 134, 102 S. Ct. at 1575; <u>accord</u> <u>Smith v. Collins</u>, 977 F.2d 951, 956 (5th Cir. 1992) (quoting <u>Engle</u>). In this respect, other defense counsel had in fact perceived and litigated the <u>Enmund</u> claim at the time of Meanes's trial, as evidenced by the fact that counsel in <u>Enmund</u> itself had raised and litigated this claim in the Florida state court proceedings. <u>See</u> <u>Enmund v. Florida</u>, 399 So.2d 1362, 1371 (Fla. 1981) (rejecting a similar argument some three months before Meanes's trial), <u>reversed</u>, 458 U.S. 782, 102 S. Ct. 3368 (1982). Accordingly, Meanes cannot rely on the intervening decision of <u>Enmund</u> to establish cause.[5]

We turn next to Meanes's argument that he received ineffective assistance of counsel because his counsel failed to object to the court's questioning and instructions regarding the law of parties during voir dire. Although ineffective assistance of counsel can constitute cause, "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation." <u>Coleman</u>, 501 U.S. at 755, 111 S. Ct. at 2567. Counsel is not constitutionally deficient, however, if, at the time trial, such an objection would have been futile in light of existing state law and the right was not clearly established under federal law. <u>See</u>

---

[5] Because of our disposition of this issue and because the State has not argued this point, we need not decide whether <u>Enmund</u> announced a new rule for the purposes of <u>Teague v. Lane</u>, 489 U.S. 288, 109 S. Ct. 1060 (1989). For a discussion of the relationship between <u>Teague</u> and establishing cause based on an intervening decision, see <u>Selvage v. Collins</u>, 975 F.2d 131 (5th Cir. 1992).

Nichols v. State, 69 F.3d 1255, 1288 (5th Cir. 1995) (finding that counsel was not ineffective for failing to request an anti-parties instruction prior to Enmund because "it was not clearly established Texas or federal law that such an instruction, if requested, was required"). Counsel is not required "to anticipate a state appellate court's willingness to reconsider a prior holding" or a federal habeas court's willingness to "repudiate an established rule." Hill v. Black, 932 F.2d 369, 373 (5th Cir. 1991).

As noted above, at the time of Meanes's trial, Texas law permitted the law of parties to be applied to the punishment phase of a capital case. See Wilder v. State, 583 S.W.2d 349 (Tex. Crim. App. 1979), vacated and remanded on other grounds, 453 U.S. 902, 101 S. Ct. 3133 (1981). The Court of Criminal Appeals did not reverse this position until three years after Meanes's trial. See Green v. State, 682 S.W.2d 271, 287 (Tex. Crim. App. 1984). Moreover, Enmund was not decided until over a year after Meanes's trial.[6]

---

[6] Meanes argues that the language relied on by the State in Wilder was dicta. We disagree. In Wilder, the Court of Criminal Appeals clearly applied the law of parties to find the evidence of the wheel man's "deliberateness" on the basis of his co-defendant's actions. Moreover, the Texas Court of Criminal Appeals apparently thought enough of this dicta to specifically reverse Wilder in 1984, stating: "We hold that the law of parties may not be applied to the three special issues under Art. 37.071(b). Wilder and Armour v. State, 583 S.W.2d 349 (Tex. Crim. App.1979) is overruled as far as it is inconsistent with this opinion." Green, 682 S.W.2d at 287. Furthermore, we note that in his first state habeas petition, Meanes also apparently thought that Wilder held that the law of parties could apply to the punishment phase of a capital trial as well. In fact, he submitted eight (8) affidavits from Texas trial lawyers, each stating that they thought that Wilder held that the law of parties could apply to the punishment phase of a capital trial.

Meanes also argues that the State's argument that Wilder provided that the law of parties applied to the punishment phase of a capital trial "flies in the face of the assurance made by the State of Texas to the Supreme Court of the United States during oral arguments in Jurek v. Texas, 428 U.S. 262 (1978), that

Recognizing this, Meanes attempts to shift the focus from Enmund to the Supreme Court's earlier decisions in Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954 (1978), and Woodson v. North Carolina, 428 U.S. 280, 96 S. Ct. 2978 (1976). In both Lockett and Woodson, a plurality of the Supreme Court held that the Eighth Amendment requires an individualized sentencing decision in capital cases. According to Meanes, Lockett and Woodson clearly brought into question any argument that the law of parties can be constitutionally applied in the sentencing phase of a capital murder trial. Although we agree with Meanes that there was a reasonable basis for making the argument that it was constitutionally impermissible to apply the law of parties to the punishment phase of a capital trial at the time of his trial, it does not necessarily follow that his counsel was constitutionally deficient for failing to raise this claim. See Smith, 977 F.2d at 960. At its core, Meanes's argument amounts to nothing more than an argument that, because there was no cause for his procedural default in the sense that the claim was reasonably available based on earlier decisions, it must necessarily follow that his counsel was ineffective for failing to raise the argument. As we have previously held, however, "The Supreme Court clearly rejected such an 'either or' approach in Smith, 477 U.S. at 535, 106 S. Ct. at

the special scheme adopted by Texas would show a 'real basis for distinguishing among defendants.'" What the Texas executive branch argued before the Supreme Court in Jurek, however, casts no helpful light on the fact that the Texas Court of Criminal Appeals, which has the ultimate responsibility for determining what the State criminal law is, held that the law of parties applied to the punishment phase of a capital trial.

- 11 -

2667, and Carrier, 477 U.S. at 485-88, 106 S. Ct. at 2644-45."
Smith, 977 F.2d at 960.  The inescapable fact remains that Enmund
was not decided until over one year after Meanes's trial and that,
at the time of his trial, Texas law provided that the law of
parties applied to the punishment phase of a capital case. Given
the state of the law at that time, we cannot say that counsel's
performance fell outside of the "wide range of professionally
competent assistance" recognized in Strickland v. Washington, 466
U.S. 668, 690, 104 S. Ct. 2052, 2066 (1984).

Having failed to show cause for his procedural default, Meanes
may nonetheless be entitled to habeas relief if he can show that
imposition of the procedural bar would constitute a "miscarriage of
justice."  Sawyer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514,
2518 (1992).  "Where, as here, the asserted error . . . goes only
to the sentence imposed in a capital case, such a 'miscarriage of
justice' is not established unless it is shown 'by clear and
convincing evidence that but for' the asserted 'constitutional
error, no reasonable juror would have found the petitioner eligible
for the death penalty under the applicable state law.'"  Hoque v.
Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (quoting Sawyer, 505
U.S. at 336, 112 S. Ct. at 2517).  After an exhaustive review of
the record, we find that Meanes has not met this burden.

The substance of Meanes's testimony at the punishment phase
and in his confession was that he agreed to participate in the
robbery only after his co-defendant had promised him that no one
would be harmed.  He testified that his co-defendant shot at the

- 12 -

victim with the pistol three times, fired six more shots into the armored van from the same position, and then traded weapons with Meanes, who was unable to pump the shotgun, and fired the shotgun at the van nine more times. Meanes further contended that he fired only two pistol shots during the entire robbery and that these shots were at the driver's side window of the armored car in an attempt to gain entry. Meanes also argued that he never pointed the gun at Wright or told her "Get up bitch, right now or you're dead." He further testified that Santana was the only one who approached the victim's body and that Santana did so only at the end of the robbery when Santana was wielding the shotgun.

Contrary to Meanes's testimony, however, a number of eyewitnesses testified at trial that Meanes was the one holding the pistol, and no one identified him as holding the shotgun at any time. Similarly, none of the eyewitnesses testified that they saw any exchange of weapons. The eyewitness accounts contradict Meanes's version of events in many other important respects. Although Meanes asserted that only Santana approached the victim's body and only at the end of the robbery when Meanes alleges that Santana held the shotgun, Wright testified that she heard two shots as the victim was shot and that a man with a pistol then knelt by the victim and fired more shots at the van. Moreover, wet blood of the victim's type was found on the ammunition clip inside the pistol, further indicating that it was the person with the pistol who had approached the victim.

In addition, two witnesses testified that they saw both men

shooting toward the passenger side of the van at the same time at the beginning of the robbery and before the men even moved away from their car. One of the men identified the man shooting the pistol from the trunk of the car as Meanes, further contradicting Meanes's story that he only fired the pistol at the driver's side door of the van. Another witness testified that he first heard three pistol shots, followed by two shotgun blasts two to three seconds later, further contradicting Meanes's claim that Santana fired nine pistol shots in a row and then switched to the shotgun.

Given the above evidence contradicting Meanes's story and the extensive 83-page cross-examination by the prosecution, in which the State demonstrated that Meanes lied a number of times, we conclude that Meanes has fallen well short of establishing "'by clear and convincing evidence that but for' the asserted 'constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.'" Hoque, 131 F.3d at 497 (quoting Sawyer, 505 U.S. at 336, 112 S. Ct. at 2517).

CONCLUSION

For the reasons set forth above, we find that Meanes is procedurally barred from raising his Enmund claims in this court. In addition, to the extent that the district court held that Meanes received ineffective assistance of counsel, we find that decision erroneous as a matter of law. Accordingly, the judgment of the district court is REVERSED and judgment is RENDERED denying Meanes

habeas corpus relief.

                                REVERSED; RENDERED.