**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 8, 2009

Charles R. Fulbruge III
Clerk

No. 09-70005

JOHN AVALOS ALBA

Petitioner-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:04-CV-639

Before JONES, Chief Judge, and STEWART and OWEN, Circuit Judges.

PER CURIAM:[*]

Texas inmate John Alba ("Alba") seeks a certificate of appealability ("COA") to appeal the district court's denial of his petition for a writ of *habeas corpus*. Because no reasonable jurist could disagree that Alba's claims are procedurally defaulted, we deny the COA.

The details of Alba's 1991 murder of Wendy, his wife, are set forth in *Alba v. State*, 905 S.W.2d 581 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 1077 (1996). The district court described the procedural background:

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On November 19, 1991, Alba was indicted for capital murder under Section 19.03(a)(2) of the Texas Penal Code for intentionally committing murder during the course of a burglary. Alba pleaded not guilty. On May 7, 1992, after being found guilty at a jury trial, he was sentenced to death. His conviction and sentence were affirmed on direct appeal. *See Alba v. State*, 905 S.W.2d 581 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 1077, 116 S. Ct. 783, 133 L. Ed.2d 734 (1996). Alba then applied for a writ of *habeas corpus*, which the state court denied. *See Ex parte Alba*, No. 36711-01 (Tex. Crim. App. Apr. 15, 1998), *cert. denied*, 525 U.S. 967, 119 S. Ct. 414, 142 L. Ed.2d 336 (1998). On August 21, 2000, however, the United States Court of Appeals for the Fifth Circuit vacated Alba's death sentence. *See Alba v. Johnson*, 232 F.3d 208 (5th Cir. 2000). Alba was then retried on the issue of punishment only. On March 1, 2001, he was again sentenced to death. His death sentence was affirmed on direct appeal. *See Alba v. State*, No. 71487, 2003 WL 1888989 (Tex. Crim. App. Apr. 16, 2003), *cert. denied*, 541 U.S. 1065, 124 S. Ct. 2390, 158 L.Ed.2d 966 (2004). He then sought a writ of *habeas corpus* in state court, which was denied. *See Ex parte Alba*, No. 36711-02 (Tex. Crim. App. Oct. 15, 2003).

On June 23, 2005, Alba filed his amended petition for a writ of *habeas corpus* in this Court. The Court stayed Alba's federal proceedings on February 3, 2006, so that he could return to state court and present a claim that the lethal injection procedure utilized in Texas violates the Eighth Amendment's ban on cruel and unusual punishment. The state court ultimately dismissed Alba's claim. *See Ex parte Alba*, 256 S.W.3d 682 (Tex. Crim. App. 2008). Consequently, on July 15, 2008, this Court lifted its stay of these proceedings. On July 14, 2008, Alba moved the Texas Court of Criminal Appeals for leave to file another petition for *habeas corpus* relief, but his request was denied. *See Ex parte Alba*, No. WR-36711-04, 2008 WL 4356934 (Tex. Crim. App. Sept. 24, 2008).

*Alba v. Quarterman*, 621 F. Supp. 2d 396 (E.D. Tex. 2008).

Although the district court located twenty-five separate claims within Alba's petition, Alba requests a COA regarding only two:

> 1.    The State's decision to seek the death penalty was racially motivated[1] and therefore violated his rights under the Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments.

> 2.    Racially motivated imposition of the death penalty is contrary to "evolving standards of decency" and violates the Eighth Amendment.[2]

Alba first raised these claims in his state habeas petition following his re-sentencing. The state court found them procedurally barred because he did not raise them at his trial, re-sentencing, or on direct appeal. *See, e.g.*, *Ex parte Gardner*, 959 S.W.2d 189 (Tex. Crim. App. 1996) ("[T]he writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal." (quoting *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991))). The federal district court found that Alba failed to show good cause for not raising these claims earlier and denied them based on procedural default.

Under 28 U.S.C. § 2253(c), before Alba may appeal the district court's denial of his petition, he must receive a certificate of appealability. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct

---

[1] Alba argues that this motivation arose from his race, his victim's race, or some combination of the two.

[2] Although Alba characterizes these as separate arguments, his second claim appears to be entirely subsumed by the first.

in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).

To overcome his acknowledged procedural default of these claims, Alba must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). Alba argues that both reasons excused his failure to raise these claims earlier.

*Cause and Prejudice*

In order to show adequate cause for the default, Alba must demonstrate that some objective, external factor prevented his compliance with the state procedural rule. *Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)).

Alba attributes his failure to raise both claims to the same cause—the evidence was not available at the time of his re-sentencing.[3] Both claims rest upon a chart purportedly listing every murder in Collin County for 15 years,[4] the race of the defendant, and the race of the victim. He asserts that only after his re-sentencing had he "reached a point where he could legitimately lay the pattern emerging from Collin County's capital litigation at the feet of racism."

---

[3]Paradoxically, Alba repeatedly asserts that his original trial and his resentencing were both pervaded by racism, yet he claims not to have had an inkling that the County's prosecutors were allegedly engaged in systematic racially-charged death penalty decisions.

[4]Demonstrating commendable candor, Alba volunteers that he decided to begin the analysis period "slightly after the date of the last trial of a white person for capital murder." Such transparent attempts to manipulate the statistics do nothing to reassure the court of their credibility.

Why he was unaware of his claim during the direct appeal of his re-sentencing in 2001 is wholly unexplained in his briefing. He makes no attempt to show what additional evidence became available between 2001 and 2003, when he first raised the claim in his state habeas petition. The chart includes a date in each row, ranging from "1/5/1991" to "8/22/2000." Without a column title the meaning of these dates is unclear, but since the date in Alba's row reads "8/5/1991," we assume they are the dates of the murders. By not including the sentencing dates, Alba makes it impossible to evaluate whether he should have been aware of this claim on direct appeal of his re-sentencing.[5] Reasonable jurists would not disagree that Alba has failed to meet his burden to show cause for his procedural default.

*Fundamental Miscarriage of Justice*

A federal court may hear the procedurally defaulted claims of a state prisoner if the failure to hear those claims would constitute a "miscarriage of justice" because the prisoner is actually innocent. *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518–19 (1992). Applied to the death penalty, Alba must "show by clear and convincing evidence that but for constitutional error at

---

[5]This is far from the largest problem with Alba's statistics. To adequately allege racially motivated charging decisions, Alba would need to identify when charging decisions were made and compare treatment of different defendants at that point in time. The statistics he presents fail to do so—the "trial-life" notation, for example, does not reveal whether the death penalty was sought and rejected by a jury or never sought.

Alba distinguishes "plea-life" from death, but presumably in at least some of these cases the plea was an alternative to facing a capital trial.

The question is not, as Alba appears to believe, what ultimately happened to a defendant, but whether, had the defendant not pled guilty, the prosecution would have sought the death penalty. In this analysis, sentences actually imposed by juries and decisions to plead guilty have no significance.

his sentencing hearing, no reasonable juror would have found him eligible for the death penalty." *Id.* at 350.

The only cognizable actual innocence claim made by Alba is his argument that he murdered his wife *outside* her friend's apartment and therefore did not commit the murder during a burglary.[6] This claim fails because Alba presents no new evidence—he merely makes an argument that the jury rejected.

For the foregoing reasons, reasonable jurists could not disagree with the district court's refusal to entertain Alba's claims because he failed to assert them timely in the state courts and is unable to satisfy the federal standards for excusing procedural default. Alba's request for a COA is DENIED.

---

[6]Alba additionally attempts to argue that he is actually innocent because "but for the unconstitutional use of race against him in its charging practices he would never have been charged with capital murder." The assertion that Collin County executes an insufficient number of white murderers might raise a constitutional claim, but this purported constitutional violation has no bearing on whether Alba "committed an act for which the United States Constitution and [Texas] laws permit imposition of the death penalty." *Schlup*, 513 U.S. at 316.