# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2012

No. 11-70004

Lyle W. Cayce
Clerk

CARLOS MANUEL AYESTAS, also known as Dennis Zelaya Corea,

Petitioner-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-2999

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

A Texas jury sentenced Carlos Manuel Ayestas to death for a murder he committed during a home robbery. The Texas Court of Criminal Appeals affirmed. That court also denied his application for habeas corpus. Ayestas then applied for a writ of habeas corpus from the United States District Court for the Southern District of Texas. It, too, was denied. Ayestas now seeks a certificate of appealability ("COA") from this court on four issues. We DENY the COA.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-70004

FACTS

On September 5, 1995, Carlos Manuel Ayestas and two other men entered into the Houston, Texas home of Santiaga Paneque, to commit a robbery. Paneque was killed during the robbery. Her son later discovered her body lying in a pool of blood on the floor of the master bathroom. She had been bound with the cord of a clock as well as by duct tape. Duct tape had also been placed over her eyes and around her neck. The wounds on her face resulted from a severe beating. The autopsy showed that she had numerous fractures as well as internal hemorrhaging. These injuries were inflicted prior to death. While they were serious, none were fatal. Rather, Paneque was killed by strangulation.

The roll of duct tape used to bind Paneque was found at the scene. Ayestas's fingerprints were on the roll and also on the pieces of tape which were used to bind Paneque's ankles.

A few weeks later, while in Kenner, Louisiana, Ayestas confided to another man that he had killed a woman in Houston in the course of a robbery earlier that month. Ayestas sought the man's assistance in killing his two accomplices because he feared they would say too much. If the man did not help, Ayestas said he would kill him as well. To make his point, he brandished a machine gun.

After Ayestas went to sleep, the man called the police. Ayestas was arrested and in time returned to Texas for prosecution.

Ayestas was indicted for capital murder and convicted after a jury trial. At the punishment stage, Texas presented evidence that, three days after Paneque's murder, Ayestas and two other men burglarized a hotel room. Ayestas, armed with a machine gun, forced the two occupants into the bathroom and threatened to kill them. After one of the men begged for his life, Ayestas decided not to murder them. He warned the men that if either called the police, Ayestas would kill their families. Ayestas introduced into evidence three letters

2

No. 11-70004

from the English teacher at the Harris County Jail stating he was a serious, well-behaved student who had no history of committing violent crimes.

The jury determined that Ayestas would likely commit future violent crimes. He was sentenced to death.

Ayestas appealed to the Texas Court of Criminal Appeals. That court affirmed both his conviction and his sentence. He then filed an application for habeas corpus with that court. It was denied.

Ayestas then applied for a writ of habeas corpus from the United States District Court for the Southern District of Texas. *See* 28 U.S.C. § 2254. He alleged he received ineffective assistance of counsel, the evidence was insufficient to convict, the jury instructions were unconstitutional, his rights under the Vienna Convention were violated, and multiple portions of the trial violated his Fourteenth Amendment right to due process.

The district court denied Ayestas's petition. It also refused to grant a COA. Before this court, Ayestas requestes a COA on the following issues. (1) His counsel was ineffective by failing to investigate mitigating evidence and not preparing for trial in a timely manner. (2) His Sixth, Eighth, and Fourteenth Amendment rights were violated when the police did not inform him of his rights under the Vienna Convention and his counsel failed to object to this fact at trial. (3) He received ineffective assistance when his trial counsel did not object to the dismissal of certain prospective jury members and this failure led to a constitutionally infirm trial. (4) He should be allowed to return to state court to exhaust certain claims.

## DISCUSSION

To obtain a certificate of appealability, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That showing is made if "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could

No. 11-70004

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Our review is distinct from a ruling on the merits of the applicant's claims. It "requires an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336. This court does not have jurisdiction to resolve the merits unless a certificate of appealability is granted. *Id.* at 342. In a capital case, "any doubts as to whether a COA should issue must be resolved in the petitioner's favor." *Mitchell v. Epps*, 641 F.3d 134, 142 (5th Cir. 2011) (quotation marks and citation omitted).

These examinations must be made through AEDPA's deferential lens. *Reed v. Quarterman*, 504 F.3d 465, 471 (5th Cir. 2007). Federal habeas relief is permitted only if "the state court's adjudication on the merits (1) 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States' or (2) 'resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Rocha v. Thaler*, 619 F.3d 387, 393 (5th Cir. 2010) (quoting 28 U.S.C. § 2254(d)), *cert. denied*, 132 S. Ct. 397 (2011). Any factual determinations made by the state court are "presumed to be correct" and the applicant can overcome this presumption only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*1.    Ineffective Assistance of Counsel in Failing to Investigate*

Ayestas argues that his counsel was ineffective during the punishment phase. Generally, to prove a violation of the Sixth Amendment right to counsel, a defendant must show his counsel's representation fell below "prevailing professional norms," and that there is a reasonable probability prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Under the usual circumstances of direct review, it is "strongly presumed" that counsel has

No. 11-70004

"rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quotation marks and citation omitted). "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Id.* (quotation marks and citation omitted).

A counsel's decision to limit any investigation is permissible "to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. "[S]crutiny of a counsel's performance must be highly deferential" and "every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quotation marks and citation omitted).

In addition to proving the unreasonableness of the representation, a petitioner must prove prejudice. *Strickland*, 466 U.S. at 692. The prejudice must be of the kind there is a "substantial, not just conceivable," likelihood of a different result. *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011). That is, after independently reviewing the evidence for and against aggravation presented at trial and before the state habeas court, "there is a reasonable probability that, absent the errors, the jury would have answered the mitigation issue differently." *Ex Parte Gonzales*, 204 S.W.3d. 391, 394 (Tex. Crim. App. 2006).

Because of AEDPA, when the court is asked to review a state habeas court's decision regarding the effectiveness of trial counsel, its review is "doubly deferential." *Druery v. Thaler*, 647 F.3d 535, 538-39 (5th Cir. 2011) (quotation marks and citation omitted). To obtain a COA, a petitioner must show that it was "necessarily unreasonable for the [state court] to conclude: (1) that he had not overcome the strong presumption of competence; and (2) that he had failed to undermine confidence in the jury's sentence of death." *Cullen*, 131 S. Ct. at

1403. Therefore, in the AEDPA context, this court does not ask whether the trial counsel's conduct was sufficiently deficient. Rather, the correct question is whether the state habeas court's decision that the attorney was constitutionally adequate was objectively unreasonable. *Amos v. Thornton*, 646 F.3d 199, 204-05 (5th Cir.), *cert. denied*, 132 S. Ct. 773 (2011). Because an incorrect application of federal law is not by itself unreasonable, *Pape v. Thaler*, 645 F.3d 281, 287 (5th Cir. 2011), *cert. denied*, 2012 WL 117632 (Jan. 17, 2012), relief may be granted only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Richter*, 131 S. Ct. at 786.

For a COA, we are limited to deciding whether jurists of reason would find the answers to these questions debatable or whether the issues deserve encouragement to proceed. *Mitchell*, 641 F.3d at 142.

Ayestas claims that his counsel was ineffective by waiting until shortly before trial to investigate whether mitigating evidence might exist which could be used during the trial's punishment phase. In support of his argument, Ayestas relies on the ABA 1989 Death Penalty Guidelines. Those guidelines provide that investigations regarding the punishment phase of a capital trial "should begin immediately upon counsel's entry into the case and should be pursued expeditiously." ABA 1989 Guidelines, Guideline 11.4.1.A. An investigation should occur "regardless of any initial assertion by the client that mitigation is not to be offered. This investigation should comprise efforts to discover all reasonably available mitigating evidence." *Id.* Guideline 11.4.1.C. He stresses the immediacy required by the Guidelines.

He asserts that his trial counsel failed to follow the Guidelines by not investigating possible mitigating evidence until days before trial. Texas disputes this factual assertion, arguing that defense counsel diligently investigated

No. 11-70004

mitigating evidence long before the eve of trial and would have done more but for Ayestas's refusal to cooperate.

The ABA Guidelines do not control our assessment. The Supreme Court has explained that "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby v. Van Hook*, 130 S. Ct. 13, 17 (2009) (quotation marks and citation omitted). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo v. Moore*, 131 S. Ct. 733, 740 (2011) (quoting *Strickland*, 466 U.S. at 690). We look for guidance about the norms in the relevant state as they existed at the time of the trial. *See Wiggins v. Smith*, 539 U.S. 510, 524 (2003). Ayestas cites cases from other circuits, but he fails to identify any authority that explains the professional norms of the Texas bar.

The Guidelines are helpful only if they "reflect prevailing norms of practice." *Van Hook*, 130 S. Ct. at 17 n.1 (quotation marks and citation omitted). The Guidelines also "must not be so detailed that they would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* (quotation marks and citation omitted). Whether a counsel's decisions are legitimate will depend on the circumstances. *Id.* at 16. We now turn to the circumstances of this case.

The state habeas court found that before trial, Ayestas repeatedly told his attorney that he did not want his family in Honduras to be contacted. After the jury was selected, Ayestas changed his mind. Once Ayestas relented, the state habeas court determined that his counsel acted diligently. She employed an investigator and sought the assistance of the American Embassy in Honduras. According to the state court, "Ayestas's sister stated there were reasons the family would have difficulty leaving Honduras for the applicant's trial, including their father's illness, economic reasons, and their father's murder of a neighbor."

7

No. 11-70004

The totality of the circumstances led the state court to conclude that Ayestas's trial counsel was not ineffective.

Ayestas argues that the state court decision conflicts with two Supreme Court cases, *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Porter v. McCollum*, 130 S. Ct. 447 (2009). In *Rompilla*, the Court held that counsel was ineffective for failing to review the state's file regarding the defendant's prior conviction. 545 U.S. at 383-84. This file was important because the state had indicated that it planned to use the defendant's past conviction as evidence of his violent character. *Id.* at 383. Counsel reviewed a part of the file only after being warned twice by the state that it would present a portion of the transcript of the prior victim's testimony. *Id.* at 384. Once counsel retrieved the file, he only reviewed her testimony. He "apparently examined none of the other material in the file." *Id.* at 385. Counsel's efforts were unreasonable: the file was readily available, concerned a crime similar to the one charged, and counsel knew the state would review the file for aggravating evidence. *See id.* at 389.

Here, Ayestas complains of counsel's failure to investigate and interview persons in Honduras regarding his childhood and lack of a criminal record. His counsel's task was much more arduous than simply reviewing a "file sitting in the trial courthouse, open for the asking." *Id.* She was delayed in beginning the effort by Ayestas's own conduct.

Ayestas also refers us to a case in which a jury sentenced to death a decorated Korean War veteran who suffered from post-traumatic stress disorder, was mildly retarded, and had been beaten severely throughout his childhood by his father. *Porter*, 130 S. Ct. at 448-49. Although his counsel noted these "other handicaps," the mitigating evidence introduced at trial consisted of inconsistent testimony regarding Porter's behavior while intoxicated and that he and his son had a good relationship. *Id.* at 449. His counsel failed to introduce additional evidence because the counsel had only a brief meeting with Porter, failed to

8

obtain any of Porter's school, medical, or military records, and did not interview any members of his family. *Id.* at 453. The Court held that the counsel's conduct was unreasonable because "counsel did not even take the first step of interviewing witnesses or requesting records." *Id.* It did not matter that Porter had asked that his ex-wife and son not be interviewed – he did not forbid speaking with anyone else. *Id.* The trial counsel's conduct was objectively unreasonable because he failed "to conduct *some* sort of mitigation investigation." *Id.*

Unlike in *Porter*, the trial counsel here requested documents from the state and interviewed numerous persons regarding the mitigation phase of trial.

AEDPA provides relief "if the state court (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and reaches an opposite result." *Simmons v. Epps*, 654 F.3d 526, 534 (5th Cir. 2011) (quotation marks and citation omitted).

We considered a related claim by a state prisoner who alleged ineffective assistance because his counsel failed "to hire an investigator or contact and interview witnesses for trial including [the prisoner's] family members about testifying at the punishment phases of the trial." *Roberts v. Dretke*, 356 F.3d 632, 638 (5th Cir. 2004). That argument failed because before trial the prisoner had instructed his attorney not to contact his family or hire an investigator. *Id.* at 635, 639. He could not claim after-the-fact that his counsel was ineffective for following his instructions. *Id.* at 639. "Under Fifth Circuit case law, 'when a defendant blocks his attorney's efforts to defend him, including forbidding his attorney from interviewing his family members for purposes of soliciting their testimony as mitigating evidence during the punishment phase of the trial, he cannot later claim ineffective assistance of counsel.'" *Sonnier v. Quarterman*, 476 F.3d 349, 362 (5th Cir. 2007) (quoting *Roberts*, 356 F.3d at 638).

No. 11-70004

As noted, we do not ourselves decide whether Ayestas received ineffective assistance of counsel. AEDPA requires this court to ask "whether it is possible fairminded jurists could disagree" that the state court's decision conflicts with Supreme Court precedent. *Richter*, 131 S. Ct. at 786. If the answer to that question is yes, federal habeas relief is unavailable. *Id.* The state court supported its conclusions with citations to Texas precedent for instances where similar representation was found to not be ineffective. "A state court must be granted deference and latitude" to determine whether the counsel's conduct fell below the Sixth Amendment's floor. *Id.* at 785. Due to the leeway AEDPA provides, our general review shows that "it is not debatable that the state court's resolution of this issue was not unreasonable." *Druery*, 647 F.3d at 540.

2.    *Ayestas's Rights Under the Vienna Convention*

Ayestas argues that his constitutional rights were violated because he was never told of the protections afforded to him by Article 36 of the Vienna Convention. *See Vienna Convention on Consular Relations*, Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820. This argument was not made at trial. For this reason, the state habeas court held it was procedurally defaulted. Usually, a federal court may not entertain a claim when the state court did not address it due to the prisoner's failure to comply with a state procedural requirement so long as the court's determination was based upon "independent and adequate state procedural grounds." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (quotation marks and citation omitted). The Texas contemporaneous objection rule is a procedural requirement that serves as an independent and adequate ground. *Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005).

Ayestas argues that, notwithstanding his default, he should be allowed to pursue the claim because cause for the default exists due to his trial counsel's ineffectiveness. This prejudiced him because, had the Honduran Consulate been notified sooner, "it would have been in a better position to lend support."

10

No. 11-70004

His claim is not debatable among jurists of reason nor does it deserve encouragement to proceed. To prove ineffective assistance, he must show that his counsel's performance was unreasonable and that he was thereby prejudiced. *Druery*, 647 F.3d at 538. He cannot prove either because this Article of the Vienna Convention "does not create individually-enforceable rights." *Rocha*, 619 F.3d at 407. Because any objection would have been futile, his counsel's failure to object was neither unreasonable nor prejudicial. *See Meanes v. Johnson*, 138 F.3d 1007, 1011-12 (5th Cir. 1998). Additionally, he does not show prejudice because he fails to claim that the Honduran consulate would have provided any support. He simply contends that it would have been in a better position to be supportive had it been informed. He invites this court to speculate whether the consulate would have acted in specific ways. We decline to do so. His request for a COA on this issue is denied.

### 3.    *Dismissal of Prospective Jurors*

Ayestas claims the *voir dire* was inadequate and that he received ineffective assistance of counsel when his counsel did not object to the dismissal of prospective jurors who were disinclined to impose the death penalty. This alleged error, he argues, led to a jury prone to sentence him to death.

A prospective juror may be excused for cause "if their views on capital punishment would prevent or substantially impair the performance of their duties in accordance with the instruction and oath." *United States v. Fields*, 483 F.3d 313, 357 (5th Cir. 2007) (quotation marks and citation omitted). For example, it is proper to strike a venire member who states he "could never, regardless of the facts and circumstances, return a verdict which resulted in the death penalty." *Id.* It is also proper to strike a member who, in response to being asked whether she could vote for death under any circumstances answers, "No, I don't think so." *Williams v. Collins*, 16 F.3d 626, 632-33 (5th Cir. 1994).

11

No. 11-70004

The state habeas court found that the trial court individually questioned each member of the venire and "elicited information that they would not impose the death penalty under any circumstances." The state court held that this approach "did not lessen the State's burden [to strike a potential juror] for cause and that the State's burden was met through the responses elicited by the trial court during voir dire examination." Ayestas has failed to rebut these findings with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Ayestas also argues that his counsel should have further questioned the venire members. We do not find that failure to be improper. Once prospective jurors have indicated during general *voir dire* that they would not impose the death penalty under any circumstances, further questioning is not required. *See Ortiz v. Quarterman*, 504 F.3d 492, 503 (5th Cir. 2007). A COA will not issue.

### 4.    Unexhausted Claims

Before the district court, Ayestas requested a stay and abeyance so that he could return to state court to pursue admittedly unexhausted claims. A "stay and abeyance should be available only in limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Courts should be cautious about granting these motions as they "undermine[] AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.* A district court's denial of a stay and abeyance is reviewed for abuse of discretion. *Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir.), *cert. denied*, 131 S. Ct. 506 (2010).

When an applicant for a writ of habeas corpus brings an unexhausted claim in federal court, as Ayestas has done here, "stay and abeyance is appropriate when the district court finds that there was good cause for the failure to exhaust the claim; the claim is not plainly meritless; and there is no indication that the failure was for purposes of delay." *Id.*

No. 11-70004

Ayestas fails to show good cause.  His position is premised on the belief that his state habeas counsel failed to raise certain claims.  Assuming his allegation to be true, it is nonetheless insufficient.  Generally, errors by "habeas counsel cannot provide cause for a procedural default."  *Cantu v. Thaler*, 632 F.3d 157, 166 (5th Cir. 2011) (quotation marks and citation omitted).

Further, any claim is meritless because it is procedurally barred.  *See Williams*, 602 F.3d at 309.  With only a few exceptions, Texas bans subsequent habeas petitions.  *See* Tex. Code Crim. Proc. art. 11.071, § 5(a).  The exceptions clause requires a prisoner to prove the factual or legal basis for his current claims was unavailable when he filed his previous petition and that "the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence."  *Ex Parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007).  Ayestas has failed to allege that the factual and legal basis for his claim was unavailable when he filed his previous petition.  Rather, he asserts that a better attorney would have pressed the claims.  Such a statement is a tacit admission that the claims he now seeks to exhaust could have been advanced in his previous state habeas proceeding.  Therefore, his unexhausted claims are procedurally barred.  That Ayestas has not shown that the district court abused its discretion by denying the motion for stay and abeyance is beyond reasonable debate.

Ayestas's motion for a certificate of appealability is DENIED.

13